IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

KERRY FIELDS                                                                                    PLAINTIFF

v.                                          No. 1:05CV00093 JLH

EXCEL INVESTMENTS, INC.; and
EXCEL INVESTMENTS, III, INC.                                                           DEFENDANTS

**OPINION AND ORDER**

Defendant Excel Investments, Inc., ("Excel") and Excel Investments, III, Inc., ("Excel III") have filed separate motions to dismiss for lack of personal jurisdiction and venue pursuant to Rules 12(b)(2) and (b)(3) of the Federal Rules of Civil Procedure (Docket #17 and #19). For the reasons contained herein, the motions are denied.

**I.    The Parties.**

Excel is a Kansas corporation with its principal places of business in Iola, Kansas, and Bolivar, Missouri. Excel owns a majority interest in SDI of Mountain View, Arkansas, L.L.C., which owns and operates a Sonic Drive-In restaurant in Mountain View, Arkansas.

Excel III is a Kansas corporation with its principal place of business in Bolivar, Missouri. Excel III owns majority interests in SDI of Harrisburg, Arkansas, L.L.C., which owns and operates a Sonic Drive-In restaurant in Harrisburg, Arkansas; in SDI of Perryville, Arkansas, L.L.C., which owns and operates a Sonic Drive-In restaurant in Perryville, Arkansas; and in SDI of Melbourne, Arkansas, L.L.C., which owns and operates a Sonic Drive-In restaurant in Melbourne, Arkansas.

Kerry Fields is a resident of Stone County, Arkansas. Until July 2005, Fields was the supervising member and owner of a minority interest in SDI of Mountain View, Arkansas, L.L.C.; SDI of Harrisburg, Arkansas, L.L.C.; SDI of Perryville, Arkansas, L.L.C.; and SDI of Melbourne, Arkansas, L.L.C. (collectively, "the Arkansas LLCs"). As supervising member of the Arkansas

LLCs, Fields was engaged in the day-to-day operations of the Sonic Drive-In restaurants these LLCs owned.

## II.     The Course Of Action.

At a meeting held on July 29, 2005, Excel and Excel III voted their majority ownerships to expel Fields as a member of the Arkansas LLCs. On November 16, 2005, Fields filed suit in the Circuit Court of Stone County, Arkansas, seeking damages and a declaratory judgment for breach of contract, breach of fiduciary duty, and breach of implied covenant of good faith and fair dealing. Excel and Excel III removed to federal court on the basis of diversity and now move to dismiss the action for lack of personal jurisdiction and improper venue.

## III.    Personal Jurisdiction.

A district court in a diversity action may assume jurisdiction over non-resident defendants only to the extent permitted by the forum state's long-arm statute and the due process clause of the Fourteenth Amendment. *Ferrell v. Westbend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005). Arkansas's long-arm statute extends personal jurisdiction over non-residents to the maximum extent permitted by the due process clause of the Fourteenth Amendment. Ark. Code Ann. § 16-4-101(B) (Michie 1999). Consequently, the only inquiry the Court need make is whether the due process clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over the defendants in this case.

In *Ferrell*, the court reiterated the well-established rules of law on this issue:

> The Due Process Clause requires the existence of "minimum contacts" between a defendant and the forum State. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). The requisite minimum contacts must be based upon "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S.

>235, 253, 78 S. Ct. 1288, 2 L. Ed. 2d 1283 (1958)).  In addition, even where "minimum contacts" are established, the Due Process Clause also forbids the exercise of personal jurisdiction where it nonetheless would be inconsistent with "traditional notions of fair play and substantial justice."  *Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

*Ferrell*, 393 F.3d at 790-91.  "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"  *Burger King Corp.*, 471 U.S. at 472, 105 S. Ct. at 2182 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977) (Steven, J., concurring in judgment) and *World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S. Ct. 567).  "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.  *Id*. at 472-73, 105 S. Ct. at 2182 (footnote and citations omitted).

Based on these cases, the Eighth Circuit has instructed district courts to consider the following factors in determining whether personal jurisdiction exists: "(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties."  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004) (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).  The first three factors are most important.  *Id*.

When a defendant challenges personal jurisdiction, the plaintiff must make a *prima facie* showing of jurisdiction by affidavits, exhibits, or other evidence. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). Although the Court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in his favor, the burden of establishing jurisdiction lies with the plaintiff. *Id*. at 983-94.

Excel and Excel III contend that the only meaningful contact each has with Arkansas is its "mere ownership" of one or more Arkansas LLCs, which, according to them, is insufficient to subject them to jurisdiction in this state. In support, Excel submits an affidavit by Jeffry Chambers, the Chief Operating Officer of Excel, which states:

2. Excel is a Kansas Corporation with its principal places of business in Bolivar, Missouri and Iola, Kansas, and is not registered to do business in Arkansas.

3. Excel does not maintain an agent for service of process in Arkansas or for any other business or legal purposes.

4. Excel does not maintain a place of business or other business operations in Arkansas.

5. Excel does not sell, distribute or license any products or services in Arkansas.

6. Excel does not have an address or telephone number in Arkansas.

7. Excel does not, and has never[,] maintained a bank account in Arkansas.

8. Excel has never paid any taxes in Arkansas.

9. Excel does not have employees domiciled in Arkansas.

10. Excel does not maintain records, goods, or other business supplies in Arkansas.

11. Excel does not conduct board of director meetings in Arkansas.

12. Excel does have an interest, purely as a majority owner, in one separate entity (Limited Liability Company) that is registered in Arkansas.

13. Aside from its bare ownership status in certain Arkansas Limited Liability Companies, Excel does not itself derive any revenue from goods or services sold in Arkansas.

14. Although the Arkansas LLC in which Excel has an ownership interest in advertises its restaurant, Excel . . . directs no advertising toward Arkansas, or towards any other state.

15. Excel does not own any real or personal property in Arkansas, except to the extent that Arkansas law considers bare ownership interest in an LLC to be "property."

16. Excel does not exercise control over day to day operations over any entity having contacts with Arkansas.

17. Although Excel, from its Missouri and Kansas headquarters, does exercise the rights of a majority owner in the Limited Liability Company located in Arkansas, it holds ownership interest in the LLC that has an Arkansas based manager and supervisor (who are also members of the LLC, and not employees of Excel) who are responsible for the day-to-day operations of the business of the LLC.

18. The role of Excel is strictly that of a majority owner of an Arkansas LLC, and aside from executive decisions, Excel delegates day-to-day operations to the local managers and supervisors who are members and agents of the LLC, not employees of Excel.

19. All executive decisions made regarding the Limited Liability Company in Arkansas is [sic] made by Excel in Missouri or Kansas, not in Arkansas; more specifically, Supervisor's [sic] meetings are held in Missouri, Manager meetings are held in Missouri and all Board of Director's [sic] meetings are held at the company's executive headquarters in Iola, Kansas.

20. Excel officers visit the Arkansas LLC store location from time to time as majority owners of said LLC for executive purposes only, such as to inspect the store, determine the quality of it's [sic] operations, management and supervision, and to develop an "action list" of problems to be dealt with and/or resolved by the local manager and supervisor of the LLC.

21. The Operating Agreement for the Limited Liability Company located in Arkansas was drafted outside of Arkansas, in Kansas.

22. The Operating Agreement for the Limited Liability Company located in Arkansas was executed by Excel in Kansas.

23. The meeting held on or around July 29, 2005, at which Excel voted its majority ownership to expel Kerry Fields as a member from the Limited Liability Company located in Arkansas, was held in Missouri and not in Arkansas.

24. Excel's local counsel is not licensed to practice law in Arkansas, and as a result of this litigation, Excel has had to hire separate legal counsel for representation in Arkansas as [sic] great expense and inconvenience.

Excel III submits an almost identical affidavit by Chambers, who also serves as President of Excel III. The only differences between the affidavit he provided on behalf of Excel and the one he provided on behalf of Excel III is that the affidavit on behalf of Excel III states that Excel III has "its principal place of business in Bolivar, Missouri"; that "Excel III does not direct any advertising specifically toward Arkansas"; that "Excel III does have an interest, purely as a majority owner, in three separate entities (Limited Liability Companies) that are registered in Arkansas"; and that the "Operating Agreements that correspond to these LLCs were executed by Excel III in Missouri." The affidavit on behalf of Excel III also differs in that it lacks statements regarding Excel III that correspond with paragraphs 17, 18, and 20 in the affidavit on behalf of Excel. In all other respects, Chambers attested to exactly the same things in regards to Excel III as he attested to in regards to Excel.

In response to both motions, Fields submits his own affidavit, which states:

6. I have dedicated most of my professional life to acting as a supervising member engaged in the day to day operations for Excel Investments, Inc. and Excel Investments III, Inc. (collectively, "Excel") owned Sonic Drive-In restaurants (collectively, the "restaurants").

7. Excel's business is the ownership and operation of Sonic Drive-Ins in Arkansas and two other states. To my knowledge, Excel does not engage in any other business other than owning and operating Sonic Drive-Ins.

8. Excel holds the controlling interest in each of the L.L.C.'s [sic] that operate the restaurants in Arkansas.

9. Excel is not a mere owner of units of ownership in each of the L.L.C.'s [sic] that operate the restaurants; rather, Excel is actively engaged in the business of the restaurants, including coordination of the day to day operations and management of the restaurants.

10. Excel actively engages in the selection and installation of managers of the restaurants on a routine basis. Typically, I would select a candidate for manager for one of the restaurants and pass that information on to Excel. Excel would then engage in an interview process with that candidate and set up a training schedule and program for that candidate. This interview process was done during visits of Excel officers to Arkansas, approximately four to six times per year over an approximate ten year period of time.

11. Excel actively dictates the day to day operations and management of the restaurants. Excel officers would visit the Arkansas restaurants to oversee their operation and management. A routine visit to the restaurants consisted of the Excel officer(s) visiting the restaurant(s), driving around the state to visit the other restaurant location(s) and conducting the interview process for any management candidates. The Excel officers' visits to Arkansas occurred approximately four to six times per year over a ten year period for an approximate length of stay of two days and nights per visit. During these routine visits, the Excel officer(s) would fill out Director of Operations Reports on the operation and management of each restaurant. In addition to Excel officers' managing the business of the restaurants through their routine visits to the restaurants, Excel received a daily report or "polling results" from the restaurants with respect to the restaurants' daily numbers, including sales, food costs, etc. In response to the daily "polling results," Excel officers would contact me by telephone in Arkansas approximately three to four times per week and by email correspondence approximately three to four times per week, including email correspondence on Saturday and Sundays. Further, Excel issued its own operational handbook for each of the Arkansas restaurants to use as a guide for the restaurants' daily operations, in lieu of the operational handbook made available to Sonic Drive-In franchises by Sonic Inc. This operational handbook provided by Excel to the restaurants dictates the day to day operations of each of the restaurants, including such things as how to properly prepare various menu items and the appropriate dress code for all restaurant employees.

12. Excel holds the franchise from Sonic Inc. for the Arkansas restaurants. The officers of Excel Investments, Inc. are holders of the franchises from Sonic Inc. for the Perryville, Melbourne and Mountain View restaurants. Excel Investment III, Inc. holds the franchise for the Harrisburg restaurant. Excel, rather than the Arkansas L.L.C.'s [sic], maintains the franchisee/franchisor relationship with Sonic Inc. for all of the Arkansas restaurants, including all

        franchisee/franchisor communications and transactions involving Sonic Inc. and the Arkansas restaurants.

13.     In July 2005, Excel voted their controlling interests and expelled me as a member of the four Arkansas limited liability companies.  The alleged conduct giving rise to my expulsion occurred in Arkansas.  Specifically, the alleged conduct giving rise to my expulsion involved an alleged alteration of payroll records by an employee of the Perryville restaurant which became an issue before the Arkansas Labor Board.  Any other conduct which Excel might allege gave rise to my expulsion from the four Arkansas limited liability companies must have occurred in Arkansas, as I was a supervising member of the Arkansas restaurants during my affiliation with Excel and did not engage in any management or operation of the Arkansas restaurants outside the state of Arkansas.

In view of the facts stated in these affidavits, Excel and Excel III possess the minimum contacts in the state of Arkansas needed to subject them to personal jurisdiction in this state.  The contacts are extensive and meaningful.  Excel and Excel III's contact with Arkansas is not "mere ownership" of one or more companies registered in the state, as they would have it.  *Cf. Lauck v. E.C.K. Chivers and Assocs.*, 320 F. Supp. 463, 466-69 (E.D. Ark. 1970).  Rather, Excel and Excel III's contact with Arkansas includes at least some amount of control and direction over the management and operation of the Arkansas LLCs and, in turn, over Fields's management and operation of the Arkansas LLC-owned Sonic Drive-Ins.  Excel and Excel III, through their officers, interview and hire new managers, evaluate the operation, management, and supervision of each restaurant, inspect the restaurants, and develop "action lists" to guide local managers and supervisors in dealing with problems.  All this is achieved while physically present in Arkansas.  Indeed, by Fields's account, Excel and Excel III's officers have been made between forty to sixty two-day trips to Arkansas over a ten-year period of time.  When not in Arkansas, Excel and Excel III, through their officers, have overseen and directed some of the daily operations of the restaurants through frequent contact by phone or email, operational handbooks, and the receipt of daily reports.  All contact with

Fields and the Arkansas LLCs in Arkansas came about because Excel and Excel III had reached out and created continuing contractual relationships with these parties, knowing full well that, by doing so, they were entering into obligations that extended to Arkansas. *See Burger King Corp.*, 471 U.S. at 473, 105 S. Ct. at 2182.  In light of this, Excel and Excel III clearly and "purposefully availed [themselves] of the privilege of conducting activities" within Arkansas. *Id.* at 475, 105 S. Ct. at 2183 (citation omitted).

The present cause of action is directly related to these contacts. Fields's claim arises from his expulsion as a supervising member of the limited liability companies. While the vote to expel Fields, like most executive decisions made by Excel and Excel III, was made outside of Arkansas, it was made based on activity that occurred in Arkansas and in furtherance of their interest in the Arkansas LLCs. Excel and Excel III should have foreseen that, if they were sued in connection to their operation of the Arkansas restaurants or were sued in connection to their duties toward Fields under the Operating Agreement, the suit might be brought in Arkansas. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S. Ct. at 567; *Ferrell*, 393 F.3d at 791.  Exercise of personal jurisdiction under these circumstances cannot be said to offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus.*, 480 U.S. at 113, 107 S. Ct. at 1033 (citation omitted).

Turning to the final two factors, Arkansas clearly has an interest in this dispute, which involves one of its citizens.  There is no reason to believe that the parties would be better served in another forum.  *Cf. Ferrell*, 393 F.3d at 791.  As for any convenience of the parties, "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King Corp.*, 471 U.S. at 474, 105 S. Ct. at 2183 (quoting *McGee v. Int'l Life Ins. Co.*, 355

9

U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957). There is no reason to believe that Excel and Excel III will suffer any greater inconvenience than that typically sustained by a foreign defendant. Consequently, the motions to dismiss for lack of personal jurisdiction are denied.

**IV.     Venue.**

Venue is governed by 28 U.S.C. § 1391(a). Subsection (a)(2) of that statute provides that in a civil action in which jurisdiction is based only on diversity of citizenship, the action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(a)(2). As noted in the preceding section, a substantial portion of the events giving rise to the claim occurred in Arkansas. Therefore, venue is proper in this district.

## CONCLUSION

For reasons stated above, the defendants' motions to dismiss (Docket #17 and #19) are DENIED.

IT IS SO ORDERED this 13th day of February, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE